IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| DONALD DEAN WEDEKIND, et al.,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>UNITED BEHAVIORAL HEALTH AND<br>UNITED HEALTHCARE INSURANCE<br>COMPANY,<br><br>Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS<br><br><br><br><br><br>Case No. 1:07-CV-26 TS |

---

## I. INTRODUCTION

Plaintiffs Donald and Jane Wedekind and their daughter (collectively the Wedekinds) bring an action against Defendants (collectively United) seeking payment under the insurance policy and under Nebraska state law for treatment the daughter received at the Avalon Hills residential treatment center. The Wedekinds also seek declaratory and injunctive relief, requesting the Court enjoin United from denying claims based on the policy's exclusion of residential treatment services. United moves to dismiss for failure to state a claim upon which relief may be granted. Because the

Court finds that the Wedekinds have stated a claim upon which relief may be granted, the motion to dismiss is denied.  However, the issue may be revisited after discovery.

II.   FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges as follows:

On December 23, 2003, the daughter, then a teenager, was admitted to a Nebraska hospital on the verge of heart failure due to an eating disorder.  While a patient at the hospital, she was also diagnosed with major depression.  After being discharged from the Hospital, she was later readmitted three times and finally discharged for the last time on March 12, 2004. United paid the claim for the Hospital bills for the inpatient care from the Hospital only after the Wedekinds appealed repeated United's denials.

In discharging the daughter, the doctors strongly recommended further residential treatment due to the "severe medical . . . risk."[1]  "Residential treatment services are a well-recognized and separate point on a continuum of differing levels of care for treatment of mental disorders.  They are less intensive than acute inpatient care such as the care . . . received at Children's Hospital, but more intensive than day treatment or outpatient therapies."[2]  For the Wedekind daughter, "residential treatment is a medically necessary and appropriate level of care for mental illness."[3]  Accordingly, they enrolled her at an eating disorder treatment center (the Center) located in Utah.  She was treated at the Center for the next eight months.  The bills for treatment at the Center are at issue in this case.

───────────────────

1Complaint, at ¶ 27.

2Complaint, at ¶ 35.

3*Id.* at 36.

The daughter is a beneficiary under a group health insurance policy issued to her father's employer by United.  When the Wedekinds asked United about treatment at the Center, United told them that the policy did not cover inpatient treatment at a residential treatment facility.  Following their daughter's treatment, United denied payment because it asserts that residential treatment services are specifically excluded by the policy.[4]

### III. DISCUSSION

A.      Procedural Background

The Wedekinds filed this action against United, seeking payment under the insurance policy and under Nebraska state law for the treatment the daughter received at the Center.  They also seek declaratory and injunctive relief, requesting that the Court enjoin United from denying claims based on the policy's exclusion of residential treatment services.

As part of their claim, the Wedekinds argue that the policy excluding residential treatment services violates a Nebraska state law that prohibits insurers providing mental health coverage from establishing any condition, limitation, or exclusion that places a greater financial burden on an insured for access to treatment for a mental illness than for access to treatment for a physical condition.[5]   Thus, the Wedekinds argue for a remedy under both ERISA and Nebraska state law.

United moves to dismiss the complaint for failure to state a claim under 12(b)(6).[6]

B.      Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court must determine whether the facts alleged in the complaint, if true, would entitle a plaintiff to recover.  The "court's

---

4 Policy, §2H.
5 NEB. REV. STAT. §§ 44-791 through 795.
6 FED. R. CIV. P. 12(b)(6).

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7]   In so assessing, the Court must accept all well-pleaded factual allegations in the complaint as true and must view those allegations in the light most favorable to the nonmoving party.[8]   In so doing, a Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[9]   In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[10]   The Court may decide questions of law, contract interpretation, and insurance coverage on a motion to dismiss.  However, the Court may only decide questions of contract interpretation and insurance coverage if the contract or insurance policy is unambiguous.

C.     Motion to Dismiss

United moves to dismiss the complaint on the following grounds.  First, United argues that claims made by the Wedekinds under a Nebraska state statute are preempted by ERISA.  Second United argues that plaintiff Jane Wedekind lacks standing to maintain claims against United.  Third, United argues that Nebraska law does not require coverage for the kind of treatment the daughter received at Avalon Hills.  Fourth, United argues that the terms of the insurance policy do not require

---

7 *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).
8 *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
9*County of Santa Fe, N.M. v. Public Service Co.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 1998)).
10 *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007). "[O]nce a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Id.* at 269 (quoting *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

4

coverage for the kind of treatment the daughter received at Avalon Hills.  Finally, United argues that the Wedekinds cannot assert claims under both subsection 1132(a)(1) and  subsection 1132(a)(3) of ERISA.

The Court finds that the Nebraska law is not preempted by ERISA,  Mrs. Wedekind does not have standing to maintain this action, the insurance policy may allow for coverage for treatment at residential treatment facilities, and coverage for treatment at residential treatment facilities may be required by the Nebraska statute.  Plaintiffs appear to concede the fifth issue, that remedies are not available under both subsection 1132(a)(1) and  subsection 1132(a)(3) of ERISA.

1.   The Wedekind's State Law Claim Is Not Preempted By ERISA

The Wedekinds assert claims under both ERISA and a Nebraska state statute.  Thus, the first issue before the Court is whether the claim brought under the Nebraska statute is pre-empted by ERISA.

ERISA states, and the United States Supreme Court has consistently held, that the provisions of ERISA preempt state laws that relate to employee benefit plans governed by the federal statute.[11] However, an important and relevant qualifier to this rule exists within both the statute and the case law.  This qualifier provides that even if a state law relates to plans governed by ERISA, such a law can be saved from preemption if it also "regulates insurance" under the ERISA savings clause.[12] The Wedekinds are correct in arguing that the Supreme Court has held that statutes regulating insurance include mandated-benefits statutes, which are not preempted by ERISA.  Indeed, the "Court has repeatedly held that state laws mandating insurance contract terms are saved from

---

11 29 U.S.C. §1144.
12 29 U.S.C. §1144(b)(2)(A); *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 363 (1999).

preemption under [the applicable ERISA section] §1144(b)(2)(A)."[13]  The Supreme Court has ruled that statutes similar to such mandated-benefits statutes are not preempted by ERISA either.  For instance, in *Rush Prudential HMO v. Moran*,[14] the Court held that the state statute in question was not preempted because it was "no different from the types of substantive state regulation of insurance contracts [the Court had] in the past permitted to survive preemption . . . ."[15]

In *Metropolitan Life Insurance Co. v. Massachusetts*,[16] the Supreme Court held that a Massachusetts statute "regulated insurance" and thus was not preempted by ERISA.[17] That statute required minimum mental health care benefits to be provided to state residents insured under ERISA-governed health plans.[18]  Similarly, the Nebraska statute at issue in this case requires  health insurance plans to include certain provisions concerning the treatment of mental health conditions.  Like the statute at issue in *Metropolitan Life*, the Nebraska statute is a mandated-benefits statute, and thus is saved from ERISA preemption.

United argues that even when a state statute is initially saved from preemption, ERISA could still preempt the state law if the law creates a cause of action that "duplicates, supplements or supplants the ERISA civil enforcement remedy."[19]  Indeed, the "Supreme Court has strongly indicated in dicta that a state law falling within ERISA's savings clause . . . would still be preempted

---

13 *UNUM*, 526 U.S. at 360.
14 536 U.S. 355 (2002).
15 *Id.* at 386.
16 471 U.S. 724 (1985).
17 *Id.* at 742, n.18 ("Nearly every court that has addressed the question has concluded that laws regulating the substantive content of insurance contracts are laws that regulate insurance and thus are within the scope of the insurance saving clause.").
18 *Id.* at 727, 758.
19 *Aetna Health, Inc. v. Davila*, 542 U.S 200, 209 (2004).

merely by providing remedies beyond those prescribed in ERISA."[20]  The Nebraska state law at issue, however, does not explicitly provide for any remedies in its language.  As a mandated-benefits statute it merely requires that insurance plans contain certain provisions for mental health patients.

The Court finds and concludes that, as a mandated-benefits law, the Nebraska ordinance in question is beyond the reach of ERISA preemption.  Thus, the state law cause of action in this case is not preempted.

2.  Jane Wedekind Lacks Standing

United contends that Jane Wedekind lacks standing to join in the claims asserted by her husband and daughter because she is neither the insured nor the beneficiary who is making the claim.  United contends that status as a parent who may ultimately be liable for payment is insufficient to confer standing under ERISA.

The Wedekinds contend that Jane Wedekind does have standing because (1) she is a beneficiary under the plan; (2) to clarify her rights to future benefits under the plan; and (3) because under Nebraska and Utah law she may be liable for her daughter's medical expenses.

In *Felix v. Lucent Technologies, Inc.*,[21] the Tenth Circuit explained:

Section 502(a)(1) of ERISA provides a cause of action to any "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Congress defined "participant" to mean:
    any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such

_____

20 *Kidneigh v. UNUM Life Ins. Co. of America*, 345 F.3d 1182, 1185 (10th Cir. 2003).
21 387 F.3d 1146 (10th Cir. 2004).

> organization, or whose beneficiaries may be eligible to receive any such benefit.[22]

ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."[23]

Clearly, Donald Wedekind is a plan participant and the Wedekind daughter is a beneficiary "who is or may become entitled to a benefit" under the plan.  Jane Wedekind, however, is neither the plan participant nor the beneficiary who incurred the claims at issue.  Because the Wedekind daughter is no longer a minor, the daughter is able to, and has, brought her claim that she is entitled to benefits in her own name.

As to the argument that Jane Wedekind has standing to clarify her own possible future coverage, she does not allege that as of the date of filing the Complaint she was or was not likely to become entitled to a benefit under the disputed provisions of the plan.  As noted in *Nova Health Systems v. Gandy*,[24] one of the three "irreducible constitutional minimum" criteria "a plaintiff must satisfy . . . in order for there to be a 'case or controversy' that may be resolved by the federal courts" is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[25]  In the present case, there is not even an allegation of a possibility of Jane Wedekind seeking benefits under the disputed portions of the plan.  Thus, any claim for clarification of benefits would be merely conjectural or hypothetical as to Jane Wedekind.

---

22 *Id.* at 1158-59 (quoting 29 U.S.C. § 1132(a)(1) and 29 U.S.C. § 1002(7)).
23 *Id.* at n.10 (quoting 29 U.S.C. § 1002(8)).
24 416 F.3d 1149 (2005).
25 *Id*. at 1153 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Because Jane Wedekind may be liable under state law for her then-minor daughter's medical expenses does not, in the absence of a showing of incapacity of the beneficiary who received the disputed services, give her standing under ERISA to maintain a claim for benefits that are being sought by the beneficiary in question.[26]   Therefore, Jane Wedekind's claims under ERISA will be dismissed from this action for lack of standing.

3.   The Nebraska Statute May Cover Treatment at a Residential Treatment Center

The Nebraska Mental Health Parity law was enacted to ensure a "minimum level of coverage" for mental health conditions.[27]   While the Wedekinds argue that the Nebraska statute prohibits the exclusion of coverage for a residential treatment center, United argues that the exclusion does not violate the statute.

Section 773 (1) of the Nebraska act reads in part:

[A]ny health insurance plan delivered, issued, or renewed in this state (a) if coverage is provided for treatment of mental health conditions . . . (i) shall not establish any rate, term, or condition that places a greater financial burden on an insured for access to treatment for a serious mental illness than for access to treatment for a physical health condition . . . . [28]

Section 773(2) reads:

If a health insurance plan provides coverage for serious mental illness, the health insurance plan shall cover health care rendered for treatment of serious mental illness (a) by a mental health professional, (b) by a person authorized by the rules and regulations of the Department of Health and Human Services Regulation and Licensure to provide treatment for mental illness, (c) *in a mental health center as defined in section 71-423*, or (d) in any other health care facility licensed under the Health Care Facility Licensure Act that provides a program for

---

26 Ray v. PPOM, L.L.C., 2005 WL 1984470, at *2 (E.D. Mich. Aug. 9, 2005);  *See also* ERISA Practice and Procedure § 2:8,  Requirement of participant or beneficiary status (2007) (collecting cases).

27 NEB. REV. STAT. § 44-791.

28 *Id.* §44-793(1).

the treatment of a mental health condition pursuant to a written plan.[29]

Section 71-423 defines a mental health center as, "a facility where shelter, food, and counseling, diagnosis, treatment, care, or related services are provided for a period of more than twenty-four consecutive hours to persons residing at such facility who have a mental disease, disorder, or disability."[30] Residential treatment facilities certainly fit into that definition.

If section 773 (2) is read literally, United is required under the statute to cover treatment at residential treatment facilities. First, the policy provides coverage for serious mental illnesses; second, the treatment was for a serious mental illness; and, third, the care was rendered in a mental health center as defined by Nebraska law.[31]

Although such a literal reading of the statue could result in more limits placed on those individuals in need of treatment for physical illness than those in need of treatment for mental illness, the statute does not bar policies from giving greater benefits to those with mental illnesses than those with physical illnesses. Since no actual "parity" is required by the statute, a policy could have very different limits and conditions concerning mental health and physical health, so long as no greater financial burden is placed on those receiving mental health treatment than those receiving treatment for physical illnesses. In fact, under the statute, those with mental health needs could be given more options, better benefits, and better treatment than those with physical health needs.

United argues that the Court must "give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section."[32] Thus, United contends, as section (2) is only

---

29 *Id.* §44-793(2) (emphasis added).
30 *Id.* §71-423.
31 *See id.*
32 *Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001) (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)).

the second part of the statute, it was most likely meant to be understood in conjunction with the first part of the section, which requires that a health care plan cannot "establish any rate, term, or condition that places a greater financial burden on an insured for access to treatment for a serious mental illness than for access to treatment for a physical health condition."[33]  The Court agrees that both sections must be read together.  But reading both sections together, the Court concludes that a literal, plain reading of the statute, which would ignore neither section of the statute, would lead to the conclusion that residential treatment centers are covered by the statute.

Independently of the "greater financial burden" test contained in subsection (1) of § 773, the second subsection states that "[i]f a health insurance plan provides coverage for serious mental illness, the health insurance plan shall cover health care rendered for treatment of serious mental illness . . . in a mental health center as defined in section 71-423."[34]  Residential treatment centers meet the criteria set forth in section 71-423, in that they are facilities "where shelter, food, and counseling, diagnosis, treatment, care, or related services are provided for a period of more than twenty-four consecutive hours to persons residing at such facility who have a mental disease, disorder, or disability."[35]  Thus, the statute appears to cover the treatment at issue in this case if Plaintiffs establish that the residential treatment center is a "mental health center" rendering care for a serious mental illness[36] during the time at issue.

4.  Factual Issues on Whether the Terms of the Insurance Policy May Allow for Coverage for Treatment at Avalon Hills

---

33 Neb. Rev. Stat. §44-793(1).
34 *Id.* §44-793(2).
35 *Id.* §71-423.
36 For the purposes of this motion, United concedes that the daughter suffered from a serious mental illness during her stay at the Center. Def.'s Mem. at 3, n.2.

The terms of the Wedekind's insurance plan provide coverage for mental and substance abuse illnesses provided at inpatient, intermediate, and outpatient levels of care, as well as treatment provided at an "alternate facility."[37]  In addition, under the policy, the daughter could have obtained coverage for care provided at either a "skilled nursing facility or inpatient rehabilitation center, provided that her condition otherwise would have required hospitalization."[38]  The Wedekinds argue that Avalon Hills provides intermediate care and is an "alternative facility," a fact that United concedes.  The Wedekinds also argue that Avalon Hills could qualify as a skilled nursing facility or inpatient rehabilitation center.  Due to the lack of a definition of a residential treatment facility in the policy, it is not clear whether or not Avalon Hills would necessarily be excluded from the policy, or whether it would qualify as a covered facility.  The terms of the policy, covering intermediate care, seem to allow for coverage.

In addition, considering the "in lieu of hospitalization" requirement that United claims limits the daughter's opportunity to receive any coverage,[39] questions about the daughter's actual condition are relevant to the denial of the claim.   As noted above, Wedekinds allege in their Complaint that the doctors who released the daughter from the hospital "strongly recommended that [she] receive residential treatment care as she was at severe medical and psychiatric risk."[40]  Thus, arguably, the treatment at the Center was for a condition that would have otherwise required hospitalization.

Accepting the Complaint's allegations as true and viewing them in the light most favorable to the nonmoving parties, the Court finds that the Wedekinds have stated a claim for coverage under

---

37 Complaint at ¶38.
38 *See* Defendants' Memo: Motion to Dismiss at 9.
39 *Id.* at 10.
40 Complaint at ¶ 27.

the policy. However, arguments concerning the terms of the policy may be revisited following discovery.

     5.  Equitable Relief

Plaintiffs appear to concede United's contention that where the Wedekinds have a remedy under ERISA §1132(a)(1), they may not also maintain an action for equitable relief under ERISA §1132(a)(3).   Regardless of whether it is conceded, that is the majority rule.  In *Korotynska v. Metropolitan Life Insurance Co.*,[41] the Fourth Circuit joined the majority of circuits in holding that because "[i]ndividualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions," if "adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), [equitable] relief under § 1132(a)(3) will not lie."[42]

In the present case, there is adequate relief available for the Wedekinds through review of the individual benefits claim under §1132(a)(1)(B).  Therefore, relief under § 1132(a)(3) will not lie.

## IV. CONCLUSION AND ORDER

The Court finds that a claim under the Nebraska statute is not preempted by ERISA, that coverage for treatment at residential treatment facilities is required by the Nebraska statute, and that the insurance policy may allow for coverage for treatment at the Center. Thus, the Wedekinds have stated a claim for which relief may be granted.  It is therefore

---

41 474 F.3d 101 (4th Cir. 2006) (collecting cases).
42 *Id*. at 102-03.

13

ORDERED that United Healthcare Insurance Company's Motion to Dismiss (Docket No. 6) is GRANTED IN PART and the claim for equitable relief under 29 U.S.C. § 1132(a)(3) is DISMISSED WITH PREJUDICE and the remaining ERISA claim brought by Plaintiff Jane Wedekind is DISMISSED WITHOUT PREJUDICE.  It is further

ORDERED that United Healthcare Insurance Company's Motion to Dismiss (Docket No. 6) is OTHERWISE DENIED.

DATED this 23nd day of January, 2008.

BY THE COURT:

_____
TED STEWART
United States District Court Judge

14